UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MOON a/k/a AZELIE
DELAINA MOON,

       Plaintiff,

v.

MATTHEW SISSEN, BRADLEY
SCUDDER, JESSICA HORTON,
JAMES PERRY, BETH
TROWBRIDGE, SCOTT KNAUP,
JASON WAGUS, MIKE
ROSENBROCK, JOSHUA BROWN,
ANDREW JOHNSON, SHERMAN
CAMPBELL, and JOHN DOE,

       Defendants.

_____/

Case No.  2:24-cv-12850
District Judge Susan K. DeClercq
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 34) AND ON PLAINTIFF'S MOTION TO SUSPEND MISCONDUCTS, POINTS, AND ADMINISTRATIVE SANCTIONS PENDING FINAL DISPOSITION OF THE CASE (ECF No. 39)[1]

### I.  Introduction

This is a prisoner civil rights case.  Plaintiff David Moon, also known as

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

Azelie Delaina Moon (Moon),[2] has sued Matthew Sissen (Sissen), Bradley Scudder (Scudder), Jessica Horton (Horton), James Perry (Perry), Beth Trowbridge (Trowbridge), Scott Knaup (Knaup), Jason Wagus (Wagus), Mike Rosenbrock (Rosenbrock), Joshua Brown (Brown), Andrew Johnson (Johnson), Sherman Campbell (Campbell), and John Doe alleging retaliation, deliberate indifference and failure to protect, and violations of due process, equal protection, Title II of the Americans with Disabilities Act (ADA), § 504 of the Rehabilitation Act (RA), and Michigan's Elliott Larsen Civil Rights Act (ELCRA). *See* ECF No. 1.  During the relevant time period, Moon was housed at the Gus Harrison Correctional Facility (ARF), but she has since been moved to the Macomb Correctional Facility.  (ECF No. 19).  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 16).

Before the Court are two motions: Defendants' motion to dismiss and for summary judgment on the basis of exhaustion (ECF No. 34), and Moon's motion to suspend misconducts, points, and administrative sanctions pending final disposition of the case, which is essentially a motion for a preliminary injunction. (ECF No. 39).  Moon has filed a response to the motion to dismiss, defendants have filed a reply, Moon has filed a sur-reply, and defendants have filed a response

---

[2] Moon indicates in her complaint that her chosen name is Azelie Delaina Moon and her preferred pronouns are she/her.  (ECF No. 1, PageID.4).  The Court will therefore use she/her when referring to Moon.

to the sur-reply.  (ECF Nos. 38, 40, 43, 48).  Defendants have also filed a response to Moon's injunctive motion (ECF No. 44) and the time for Moon to file a reply has passed.

For the reasons that follow, the undersigned RECOMMENDS that Defendants' motion to dismiss or for summary judgment on the basis of exhaustion be GRANTED IN PART and DENIED IN PART, and Moon's motion be DENIED.  If this recommendation is adopted, the case will continue against Sissen, Horton, Perry, Trowbridge, Knaup, Wagus, Rosenbrock, Brown, Johnson, Campbell, and John Doe on the claims described below.

## II.    Background

Moon filed her complaint on October 29, 2024.[3]  (ECF No. 1).  In it, she explains that she is a "gender dysphoric intersex woman" who is receiving treatment for gender dysphoria.  (*Id.*).  She also claims that she began experiencing retaliation after she filed a lawsuit in this Court in mid-August, case no. 2:24-cv-12180,[4] and that those acts of retaliation got worse when she tried to report them.

---

[3] On December 2, 2024, Moon filed a motion to amend her complaint.  (ECF No. 13).  The Court granted Moon's motion to amend and ordered her to file a corrected amended complaint by January 13, 2025, because the complaint that she attached to her motion was for the wrong case.  (ECF No. 17).  She did not do so. Therefore, her original complaint remains the operative complaint.

[4] According to the Court's docket, this case was transferred to the Western District of Michigan in October 2024.  According to the docket in the Western District, the case has been stayed and administratively closed due to Wellpath's bankruptcy.

(*Id.*, PageID.4).

Moon says that on September 17, 2024, she was transferred to Gus Harrison Correctional Facility and placed in a hallway with "many gang members and other prisoners with a history of disciplinary infractions," which violated the Prison Rape Elimination Act (PREA) regulations. (*Id.*, PageID.4-5). That evening, she started to experience harassment, including sexual harassment, by corrections officers Scudder and Sissen, as well as other prisoners. (*Id.*, PageID.5). On September 19, 2024, Scudder began harassing Moon about her door being open and when she responded that there was not adequate ventilation, in violation of MDOC P.D.03.03.130, he told her he did not care and started to verbally harass her. (*Id.*). Scudder left and Sissen came to close Moon's door, "mumbling something about a 'bitch.' " (*Id.*). When Moon asked him to repeat himself, he said, "Look Bitch, we all know why you're here and we're gonna bolt you up on tickets and keep you on sanctions until we send you to level four." (*Id.*).

Moon says she spoke with her case worker regarding these events, and he logged the complaints and forwarded them to the PREA Coordinator for processing. (*Id.*). Moon says she then requested a PREA grievance form, but the request was ignored. (*Id.*).

On September 20, 2024, Moon then met with Horton, a prison counselor, to discuss her safety concerns within her housing unit and her incorrect classification.

(*Id.*).  Horton informed Moon that she would be moved.  (*Id.*).  However, four days

later when Moon asked why she had not been moved, Horton told her that she had

made "unnecessary waves" by reporting Sissen and Scudder's conduct, and that

Horton would no longer help her.  (*Id.*, PageID.6).

On September 26, 2024, Perry, a food service director, harassed her about

wearing a beard guard while working in the kitchen.  (*Id.*).  Moon responded that

they were only required for those with facial hair, they irritate her skin, and

similarly situated female prisoners at Huron Valley did not have to wear them.

(*Id.*).  Perry replied, "You're not a woman and you're not at Huron Valley."  (*Id.*).

Moon says she had never worn a beard guard while working in the kitchen and it

only became an issue after she reported staff conduct.  (*Id.*, PageID.6-7).  Perry

then discussed issuing a misconduct with another officer, referring to Moon as

"this gentleman" and using improper gender pronouns, refusing to correct them

when Moon asked.  (*Id.*, PageID.7).  Moon told Perry that the way he was speaking

to her violated PREA and MDOC P.D.04.06.184(F), and Perry informed her that

she was terminated from her work assignment.  (*Id.*).

Right afterward, Moon became distraught and informed an officer that she

needed to be taken to observation because she might harm herself.  (*Id.*).  She says

that in retaliation for her actions, Sissen confiscated and disposed of her feminizing

products and other personal items while she was gone.  (*Id.*).  Later that day, Sissen

informed her that "it had gone to the school building." (*Id.*). He also said, "I would have wrote you tickets, but fuck it I don't have to look at you anymore and you probably would have beat the tickets anyway" and "let today be a lesson for you and think twice next time before telling on staff." (*Id.*).

Moon then spoke with Brown, another prison counselor, regarding getting documents "to engage in her appeals process pursuant to MDOC P.D.03.03.105 and to obtain the misconduct and hearings report for the sanctions she was about to begin serving." (*Id.*). Brown told her these items were not in her file and to kite the Warden's office about it. (*Id.*, PageID.7-8). Moon also informed Brown that she was improperly classified under PREA guidelines, but Brown did nothing. (*Id.*, PageID.8). Moon then spoke with Johnson, the assistant deputy warren, regarding her improper classification. (*Id.*). Johnson then spoke to Brown about it, but Brown "chose not to revisit the issue, seemingly by order from Defendant Johnson." (*Id.*).

Later, "for the fourth time in a year," Moon submitted a request for a search accommodation to John Doe, the unidentified deputy warden, to prevent her from being strip searched with a single male staff member, which had led her to be sexually assaulted in the recent past. (*Id.*). It was denied for "extra-textual reasons" and Campbell, the warden, signed off on it. (*Id.*). When Moon appealed, her appeal was returned unprocessed two days later. (*Id.*, PageID.8-9).

6

On October 8, 2024, Moon submitted a written request to Campbell for assistance in resolving the sanctions against her, saying that the documents needed to appeal a misconduct were never placed in her file.  (*Id.*, PageID.9).  Campbell "refused to follow the policy and provide [Moon] her procedural due process rights in the form of her appeal and rehearing on this misconduct."  (*Id.*).

On October 15, 2024, Moon left the medication line before receiving her medications due to harassment by other inmates.  (*Id.*).  Wagus, another corrections officer, tracked her down and told her he was going to write her a misconduct.  (*Id.*).  She explained the situation and he responded that "he didn't care, he, along with all other custody staff, were directed to write [Moon] up for every conceivable infraction they can."  (*Id.*).

On October 16, 2024, Moon was called out to go to the quartermaster for supplies.  (*Id.*).  Rosenbrock, the quartermaster clerk, told Moon that she had to go to medical to be sized for a bra despite Moon bringing a medical detail showing she was authorized to possess and wear bras and despite this not being policy. (*Id.*).  He also told her that she would only get used and stained bed linens since she did not return her previously issued sheets that were taken when she was on suicide watch.  (*Id.*).

The same day, Trowbridge, the prison librarian, refused Moon legal copy service for the misconducts, grievances, and grievance requests because Moon did

not have enough money in her inmate trust account.  (*Id.*).  When Moon shortened her request, Trowbridge again denied it due to unprocessed debts that were not reflected in her trust account balance.  (*Id.*, PageID.10).  Trowbridge also informed her that it was not the job of the library clerks to find department policies and procedures for her.

On October 20, 2024, Knaup, another corrections officer, harassed Moon for getting a glass of water from the sink, telling her she had to get permission to get drinking water.  (*Id.*).  When Moon responded that she did not have to request permission, Knaup threatened to write her a misconduct for getting water, which he later did.  (*Id.*).  Later that day, he wrote her another misconduct for loitering while she was standing in the hallway waiting for her cellmate to change, despite other inmates also being in the hallway at the same time.  (*Id.*).  She was then woken up around midnight on October 22, 2024, to review the misconduct written by Knaup, which "seemed suspicious" to Moon.  (*Id.*).  Overall, Moon says that the staff have a custom and practice of discrimination against members of the LGBTQIA community and a history of retaliating against inmates who file lawsuits.  (*Id.*, PageID.11).

### III.    Legal Standards

#### A.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Moon is *pro se* does not reduce her obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage,

as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

B.    Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v.*

10

*Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

IV.   Discussion

A.   Exhaustion of Administrative Remedies

1.   Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal

11

quotation marks and citations omitted).  Requiring exhaustion allows prison

officials an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court and produces a useful administrative

record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what

"proper exhaustion" entails because "it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion."  *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which

the defendant has the burden to plead and prove by a preponderance of the

evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner

countering a motion alleging failure to exhaust "must offer competent and specific

evidence showing that he indeed exhausted his remedies, or was otherwise excused

from doing so."  *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D.

Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969

(E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to

exhaust administrative remedies is not on the merits and thus requires dismissal

without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The Michigan Department of Corrections (MDOC) has established a three-

step process to review and resolve prisoner grievances.  "Under the [Michigan]

Department of Corrections' procedural rules, inmates must include the '[d]ates,

times, places and names of all those involved in the issue being grieved' in their

initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As

noted by the Court in *Woodford*, one of the purposes of requiring proper

exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own

errors." *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a

specific legal theory or facts that correspond to all the required elements of a

particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003)

*abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).

Nonetheless, the grievance must give "fair notice of the alleged mistreatment or

misconduct that forms the basis of the constitutional or statutory claim made

against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following

information at Step I of the grievance process: "The issues should be stated briefly

but concisely.  Information provided is to be limited to the facts involving the issue

being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and

names of all those involved in the issue being grieved are to be included."  MDOC

PD 03.02.130 ¶ S (underscoring omitted).  "The grievance process is exhausted

once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794,

2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

2.     Analysis

Defendants argue that Moon has not exhausted any of her claims against

them and therefore her claims should be dismissed.  Defendants have attached

Moon's Step III Grievance Report to their motion, supported by an affidavit from

Department Analyst Carolyn Nelson.  (ECF No. 34-3, PageID.308).  The Step III

Grievance Report shows that Moon did not exhaust any grievances through Step

III from August 30, 2024, through November 13, 2024.  (*Id.*, PageID.309).  The

conduct at issue in this case occurred between September 17, 2024, and October

22, 2024.  Moon does not dispute that her claims were not exhausted through the

grievance process, instead arguing in her response, which is signed under penalty

of perjury, that she was on "modified access" grievance restriction from September

4, 2024, to December 4, 2024, and that staff rendered the process unavailable to

her by denying every grievance request she submitted.  (ECF No. 38, PageID.346-

347).

     A prisoner can be placed on modified access for abusing the grievance

system.  *See* MDOC P.D. 03.02.130 ¶ PP.  Under MDOC P.D. 03.02.130 ¶ SS,

> [w]hile on modified access, the prisoner or parolee shall be able to
> obtain grievance forms only through the Step I Grievance Coordinator.
> A grievance form shall be provided if the Step I Grievance Coordinator
> determines that the issue the prisoner or parolee wishes to grieve is
> grievable and otherwise meets the criteria outlined in this policy.  The
> Grievance Coordinator shall maintain a record of requests received for
> grievance forms and whether the request was approved or denied and,
> if denied, the reason for the denial.  If a prisoner or parolee on modified
> access attempts to file a grievance using a form not provided by the
> Grievance Coordinator, the Grievance Coordinator may reject the
> grievance in accordance with Paragraph P.

A prisoner can still exhaust administrative remedies while on modified access, either through the regular three step procedure or, in some cases, when a grievance officer dismisses their request for a grievance form. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005). Specifically, "[i]f a grievance officer dismissed a non-frivolous complaint by [the inmate], that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted." *Id.*

Defendants have provided an affidavit from Darley Lawson, the grievance coordinator at Gus Harrison Correctional Facility.[5] (ECF No. 49). In her affidavit, Lawson states that upon searching the grievance office records for documents relating to Moon, she found a memo placing Moon on modified access from September 4, 2024, to December 3, 2024; a log indicating that Moon made one request for two grievance forms on September 30, 2024; and a copy of Moon's September 30, 2024 request with the associated responses. (*Id.*, PageID.493-494).

_____

[5] Defendants did not mention or address Moon's modified access status during the relevant grievance period until their response to Moon's sur-reply. (ECF No. 48). Defendants also moved to strike Moon's sur-reply, which the undersigned denied but allowed defendants to file a response to Moon's sur-reply. (ECF No. 47). Defendants' failure to bring this critical information to the Court's attention until their response to the sur-reply is troubling, especially when defendants are moving for summary judgment on exhaustion and Moon's modified access status bears directly on the merits of defendants' position. Defendants offer no explanation or excuse for the late release of this information.

She says the request attached to Moon's complaint dated September 28, 2024, *see* ECF No. 1, PageID.32, was in fact received on September 30, 2024, and the request was denied as to both grievances.  (ECF No. 49, PageID.494).  However, she says that the four previous requests referenced in the September 30, 2024 request were never filed with the grievance office, and that the request dated October 4, 2024, (ECF No. 1, PageID.33), and the undated request attached to Moon's complaint, (*Id.*, PageID.34-36), were never filed with the grievance office. (ECF No. 49, PageID.494).

Moon attached to her complaint, which is also signed under penalty of perjury, what appear to be three separate requests for grievance forms.  (ECF No. 1, PageID.32-36).  She says that she submitted these but never heard back about any of them.[6]

Attached to Lawson's affidavit is the September 30, 2024 grievance request, which is the same one Moon attached to her complaint.  (ECF No. 49, PageID.498; ECF No. 1, PageID.32).  In it, Moon begins by stating she is requesting grievances for two separate events and inquiring into the status of her previous grievance requests concerning 1) "property missing upon arrival"; 2) violation of

---

[6] Moon also says that she requested a PREA grievance form to report harassment by Sissen and Scudder, but she does not provide any information about this harassment beyond the statements made by Scudder and Sissen in relation to her door being open, and even liberally construing her complaint, it is unclear what claims, if any, she is attempting to bring against them for this conduct.

16

P.D.03.03.130(I)(2); 3) Scudder; and 4) Sissen.  (ECF No. 1, PageID.32).  She then

requested two additional grievance forms for conduct by Perry and Sissen.  (*Id.*).

For Perry, she requested a form to grieve three instances of conduct: when he

ordered that she must wear a "beard guard" contrary to hygiene and uniform rules;

when he misgendered her in his conversation with a corrections officer; and when

he fired her from her kitchen job.  (*Id.*).  Next, she requested a form to grieve

Sissen's "improper and retaliatory packup on my property in response to his fake

ticket, and prior grievance request and PREA retaliation complaint lodged against

him." (*Id.*).  On this request, as with the one attached to Lawson's affidavit, there

are two notations indicating that each request was denied.  (*Id.*).  In their response

to Moon's sur-reply, defendants concede that Moon exhausted administrative

remedies against Perry and Sissen based on this denied request for grievance

forms.

　　　Of note, although this request mentions Moon's previous grievance requests

concerning 1) "property missing upon arrival"; 2) violation of P.D.03.03.130(I)(2);

3) Scudder, and 4) Sissen, she did not actually attach these grievance requests, and

these brief mentions do not give enough information to find that they potentially

exhausted any claims.  This is the only time that Scudder is mentioned in these

requests; as such, Moon has not exhausted any claims as to Scudder.

　　　The next two requests that Moon attached to her complaint are for

17

grievances to report conduct by Horton, Rosenbrock, Trowbridge, Wagus, Knaup, Brown, Johnson, Campbell, and John Doe, the unidentified deputy warden. (*Id.*, PageID.33-36). Her October 2, 2024 request contains a grievance request for Horton's conduct in failing to move Moon after she pointed out her safety concerns and incorrect classification, as well as Horton's statement that she was unable to move her due to Moon making "unnecessary waves." (*Id.*, PageID.33). The undated request asks for grievances for the following conduct:

- Rosenbrock's refusal to provide her with bras without being sized by medical (*Id.*, PageID.34).

- Trowbridge's denial of photocopy services (*Id.*, PageID.34-35)

- Wagus' retaliatory issuance of a misconduct ticket for Moon not showing up to her med-line callout and his statement that he had been directed to write her up for every conceivable infraction (*Id.*, PageID.35)

- Knaup's two retaliatory misconducts for obtaining drinking water and "loitering" (*Id.*)

- Brown and Johnson's refusal to change her PREA classification (*Id.*)

- John Doe and Campbell's denial of her request for a search accommodation (*Id.*, PageID.35-36)

- Campbell's failure to order a rehearing on a misconduct after learning that she had not been allowed to file her appeal (*Id.*, PageID.36).

Lawson says in her affidavit that she logged and processed every request for a Step I grievance form, and at no time did she ever fail to log or process a request for a Step I grievance form. (ECF No. 49, PageID.494). Defendants also argue

that Moon's "purported kites do not bear any indicia that they were sent to or received by MDOC."  (ECF No. 40, PageID.382).

However, if Moon submitted these requests and they were ignored or denied, this would be the end of her possible administrative remedies and her claims would be exhausted.  *See Walker*, 128 F. App'x at 446.  Moon swears under penalty of perjury that she submitted them, but defendants deny receiving them.  For the purposes of a motion for summary judgment, this creates a genuine dispute of material fact.  *See, e.g.*, *McMurry v. Caruso,* No. 1:07-CV-716, 2008 WL 5422853, at *5 (W.D. Mich. Dec. 30, 2008) ("[The p]laintiff's averments and his supporting documents clearly create a genuine issue of fact about whether [the p]laintiff in fact requested grievance forms from the grievance coordinator," despite the defendants' contention that no request was received.).  As such, defendants' motion for summary judgment on the basis of exhaustion should be denied as to all defendants except Scudder.  As Scudder was not mentioned in any of the grievance requests that Moon attached to her complaint except for one briefly purporting to inquire about the status of a previous request, the motion should be granted as to him.

B.      Motion to Dismiss for Failure to State a Claim

Defendants also argue that exhaustion aside, Moon has failed to state Eighth Amendment, due process, equal protection, ADA, or RA claims.  Notably,

defendants do not argue that she has failed to state a retaliation claim under the First Amendment, nor do they make arguments related to her claims of disability discrimination under Michigan's ELCRA.  Thus, these claims survive dismissal against all defendants.

1.     Eighth Amendment Claims

Moon alleges that Horton, Brown, Johnson, and Campbell violated the Eighth Amendment by "ignoring the known risk associated with improperly classifying [her]" and housing her in an area that she says put her at risk.  (ECF No. 1, PageID.11).  She also alleges that Sissen violated the Eighth Amendment because he interfered with her gender affirming care by destroying her feminizing items.  (*Id.*).  Defendants argue that Moon had to allege that she was the victim of an actual attack, or at the very least, that she objectively faced a substantial risk of serious harm caused by her PREA classification.  (ECF No. 40, PageID.379).

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  "Although prison officials have a duty under [the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners, it is equally clear that not every injury suffered by one prisoner at the hands of another… translates into constitutional liability for prison officials." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)).  To prove a failure to protect claim, "the

20

plaintiff must show that: 1) objectively, [she] was incarcerated under conditions posing a substantial risk of harm, and 2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and failed to take reasonable measures to abate it." *Id.* (quoting *Farmer*, 511 U.S. at 829, 834, 847).  A prisoner does not need to allege that they have been the victim of an attack to sustain a failure to protect claim, but they must show that they reasonably fear such an attack*. Cristini v. Loman*, No. 2:25-CV-10, 2025 WL 900545, at *4 (W.D. Mich. Mar. 25, 2025) (citing *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994)).

Moon does not allege that she was actually attacked based on defendants' failure to properly classify her, although she does state that she was attacked at a different facility as a result of being improperly classified.  Moon also does not allege that she feared attack by any prisoner in particular or that she was specifically threatened as a result of her PREA classification; rather, she states that she feared attack because she was placed in a hallway with gang members and other prisoners with histories of disciplinary infractions.  These allegations are too vague to make out Eighth Amendment claims against the defendants.  Moon does not identify an inmate who threatened her or otherwise made her fearful; instead, she says that being housed with certain types of prisoners caused her to fear an attack.  Without more, this does not suffice to show that she was incarcerated

under conditions that created a substantial risk of harm. *See Atkins v. Washington*, No. 2:23-CV-253, 2024 WL 2075809, at *9 (W.D. Mich. May 7, 2024) ("Plaintiff alleges in a conclusory manner that he told Defendants that he feared for his safety … The Court concludes that such vague assertions of danger are insufficient to show that Defendants' failure to transfer Plaintiff constituted deliberate indifference."). Further, even though Moon has alleged that each defendant was aware of her improper classification, she does not provide allegations sufficient to show that each defendant subjectively associated this improper classification with a risk to her safety and then disregarded that risk. As such, Moon's Eighth Amendment claims against Horton, Brown, Johnson, and Campbell should be dismissed for failure to state a claim.

Regarding Moon's claim against Sissen, it is unclear what type of claim Moon is trying to make out, although in her response she seems to allege that Sissen was deliberately indifferent to her serious medical needs. Even liberally construed as a deliberate indifference claim, Sissen's alleged destruction of her feminizing products did not put her at risk of substantial harm and therefore does not satisfy the objective element of a claim of deliberate indifference to serious medical needs. Although the Court is sympathetic to Moon's status as a gender dysphoric prisoner, Moon has not otherwise adequately alleged any claims related to her medical care in her complaint. This claim should also be dismissed for

failure to state a claim.

## 2.   Due Process Claims

Moon has asserted her due process claims against Sissen and Campbell.  She says Sissen violated her substantive due process rights by failing to document the property he confiscated from her cell, which prevented her from engaging in the administrative hearings process.  She says Campbell violated her due process rights by failing to process her search accommodation appeal form, and that Campbell further violated her rights by failing to act when he became aware that other staff members were violating her due process rights and that his administration was imposing unconstitutional sanctions on her.  (ECF No. 1, PageID.11-12).  Regarding this last claim against Campbell, the closest claim that Moon potentially exhausted against him was related to his failure to order a rehearing on a misconduct after learning that Moon had not been allowed to file her appeal.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty, or property, without due process of law."  *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  "Substantive due process bars certain government actions regardless of the fairness of the procedures used to implement them." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  Procedural due process, on the other hand, "requires

23

that the government's deprivation of life, liberty, or property, even if consistent with substantive due process, be implemented in a fair manner.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *U.S. v. Salerno*, 481 U.S. 739, 746 (1987)).

To show a violation of a procedural protection, the plaintiff "must establish that one of these interests is at stake."  *Wilkinson v. Austin*, 545 U.S. 209, 221. Procedural due process is examined in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Regarding Campbell's alleged failure to order a rehearing on a misconduct, in order for Campbell to be held liable for the actions of his subordinates "he must have played an active role in the alleged violations," which it does not appear Moon has alleged.  *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (internal citation omitted).  Campbell cannot be liable solely because he was aware of due process violations and failed to act.  *Id.*  However, in the interest of completeness, Moon's claim also fails on the merits because she has not given any information regarding the misconduct or the sanctions imposed.  "A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction will

24

inevitably affect the duration of [her] sentence or the resulting restraint imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Spirdione v. Wood*, No. 1:24-CV-824, 2025 WL 715505, at *5 (W.D. Mich. Mar. 6, 2025) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (explaining that a prisoner's due process claim failed because although he alleged that a guard denied him the opportunity to prepare an adequate defense, found him guilty of a misconduct, and sanctioned him with a loss of privileges and a three dollar cost, he did not allege any sanctions that denied him a protected liberty interest). Moon has not shown a deprivation of a liberty interest related to Campbell's denial of a rehearing of the misconduct because she has not alleged that the imposed sanctions extended the duration of her sentence or that she suffered some other significant deprivation from her inability to appeal the misconduct. Therefore, this claim against Campbell should be dismissed for failure to state a claim.

Next, regarding Moon's claim related to the deprivation of her property, defendants argue that it is not a substantive due process claim because it does not "shock the conscience." (ECF No. 34, PageID.281) (quoting *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002)). Instead, defendants analyze this claim as another procedural due process claim and argue that Moon has not alleged that the state post-deprivation procedure is inadequate. The undersigned agrees

with this approach. *See Spiridone*, 2025 WL 715505, at *4 (analyzing deprivation of property as procedural due process); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (same).

To make out a §1983 claim for violation of procedural due process for deprivation of property, Moon must "establish that state post-conviction remedies are inadequate." *Petersen v. Garrett*, No. 04-60196, 2006 WL 4046224, at *3 (E.D. Mich. Aug. 3, 2006), *aff'd sub nom. Petersen v. Garett*, 2007 WL 465732 (E.D. Mich. Feb. 6, 2007) (citing *Hudson v. Palmer,* 468 U.S. 512 (1984)). The fact that defendants may have violated MDOC policy guidelines for due process does not render their actions constitutional violations. *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding that a failure to follow policy directive does not rise to the level of a constitutional violation because policy directive did not create a protectible liberty interest).

In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that there is no violation of the Due Process Clause of the Fourteenth Amendment where the complaint alleges a "random, unauthorized act, for which the State provided an adequate remedy[,]" rather than an "established state procedure[.]" *Washington v.*

26

*Randall-Owens*, No. CIV. 06-12588, 2007 WL 2713749, at \*7 (E.D. Mich. Sept. 17, 2007).  Here, Moon says the pack-up of her property was routine, but that Sissen violated policy by not documenting the property that he removed.  (ECF No. 38, PageID.357).  Therefore, Moon has alleged that a violation of MDOC policy, not the policy itself, is the cause of her deprivation.  The question is then whether there was an adequate remedy.

Although Moon alleges that Sissen failed to document the property he took and this prevented her from taking part in the administrative hearing process, she does not allege that it prevented her from taking advantage of other state post-deprivation remedies.  The Sixth Circuit has stated that Michigan "provides several adequate post-deprivation remedies." *Copeland*, 57 F.3d at 480.  For example, Mich. Comp. Laws § 600.6419(1)(a) authorizes tort or contract claims to be asserted in the Court of Claims "against the state and any of its departments or officers."  Therefore, even though Moon may have been unable to take advantage of the administrative hearing process, there were other adequate remedies for the alleged deprivation of her property.  As such, this claim should be dismissed.

Lastly, defendants do not address Moon's claim that Campbell violated her due process rights by failing to approve her search accommodation beyond arguing that Moon does not allege Campbell had a direct role in any alleged violation. (ECF No. 48, PageID.486).  However, Moon alleged in her complaint that John

27

Doe denied her request and Campbell signed off on it.  Defendants do not explain how Campbell signing off on the denial does not constitute a direct role in the alleged violation, or otherwise address whether Moon had a liberty interest, as a transgender prisoner, in not being strip searched by a single male guard.  For a 12(b)(6) motion to dismiss, the "moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  This requires the movant to *explain* why dismissal for failure to state a claim is appropriate.  *Pinnacle Bank as trustee of Ransom Fam. Tr. v. Fid. & Deposit Co. of Maryland*, 598 F. Supp. 3d 666, 670-71 (M.D. Tenn. 2022).  Defendants have not done so here.  Therefore, Moon's claim against Campbell for denying her search accommodation should survive.

### 3.    Equal Protection Claims

In her complaint, Moon alleged violations of the Equal Protection Clause against all defendants due to "her gender identity/expression and/or perceived sexual orientation."  (ECF No. 1, PageID.12).  In her response, however, she concedes that her complaint does not reflect violations of the Equal Protection Clause except as to Perry.  (ECF No. 38, PageID.359-360).  She alleges that Perry required her to wear a beard guard, misgendered her, and then terminated her from her kitchen employment.

The Equal Protection Clause provides that a state may not "deny to any

person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Moon must plead that "the government treated [her] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

Based on Moon's classification as a "gender dysphoric intersex" woman, she must show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 486 (6th Cir. 2023) (rational basis review applies to equal protection claims by individuals who identify as transgender or have been diagnosed with gender dysphoria), *cert. dismissed in part sub nom. Doe v. Kentucky*, 144 S. Ct. 389 (2023), and *cert. granted sub nom. United States v. Skrmetti*, 144 S. Ct. 2679 (2024); *Moon v. Mendez*, No. 1:24-CV-1138, 2025 WL 314097, at *9 (W.D. Mich. Jan. 28, 2025) (applying rational basis review to Moon's equal protection claims based on her status as a gender dysphoric, intersex woman); *but see L.E. by Esquivel v. Lee*, 728 F. Supp. 3d 806,

833 (M.D. Tenn. 2024) (finding that despite the Sixth Circuit's holding in *Skrmetti*, an equal protection claim based on transgender discrimination receives intermediate scrutiny as a form of sex discrimination).

The threshold element is disparate treatment, which requires Moon to allege that similarly situated individuals were treated differently. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Defendants say that Moon has not identified any similarly situated individuals. (ECF No. 34, PageID.284). However, in her complaint, Moon mentions similarly situated individuals in relation to Perry's order that she wear a beard guard, explaining that "female prisoners at Huron Valley are not required to wear beard guards and [she] is similarly situated in that they are all female prisoners incarcerated within the MDOC…" (ECF No. 1, PageID.6). Moon also asserted that hair nets and beard guards are not required when no hair is present, they irritate her skin, and, in response to Perry's assertion that they prevent inmates from inadvertently spitting on the food, that they are not impermeable membranes, which relate to whether the requirement has a rational basis. (*Id.*). Defendants do not address any of these allegations.

Again, for a 12(b)(6) motion to dismiss, the "moving party has the burden of proving that no claim exists," which requires them to explain why dismissal is appropriate. *Total Benefits*, 552 F.3d at 434; *Pinnacle Bank*, 598 F. Supp. 3d at

670-71.  Defendants have not done so here by ignoring Moon's contentions related to similarly situated female prisoners and the rationality of requiring her to wear a beard guard.  As such, Moon's equal protection claim against Perry related to the requirement that she wear a beard guard should survive defendants' motion to dismiss.  All other equal protection claims should be dismissed for failure to state a claim.

### 4.    ADA and RA Claims

Moon asserts her ADA and RA claims against all defendants in their individual capacities.  Defendants argue that this claim should be dismissed because claims under the ADA and RA cannot be brought against government officials in their individual capacities.  Defendants are correct.

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quoting 42 U.S.C. § 12132).  "The ADA and the Rehabilitation Act in this circuit share the same substantive standard." *G.S. by & through Schwaigert v. Lee*, 558 F.Supp.3d 601, 611 (W.D. Tenn. 2021) (internal citations omitted).  "Thus, the court reviews claims under the Rehabilitation Act as though they were brought under the ADA." *Id.*

A plaintiff "may not maintain an action under the ADA against individual defendants in their individual capacities." *Sebestyen v. Gardner*, 2:17-cv-550, 2021 WL 1909696, at *3 (S.D. Ohio May 12, 2021), *report and recommendation adopted*, 2021 WL 2562240 (S.D. Ohio June 23, 2021).  The same is true under the RA.  *See, e.g.*, *Middlebrooks v. Helton*, No. 3:23-cv-00054, 2023 WL 4002470, at *10 (M.D. Tenn. June 14, 2023).  This is because "the ADA does not provide for personal liability for defendants sued in their individual capacities." *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007).  Instead, "Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate Section 12132." *Middlebrooks*, at *10.  Similarly, the RA "does not impose liability upon individuals." *Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004).  Accordingly, Moon's claims under the ADA and RA should be dismissed for failure to state a claim.

### 5.    In Sum

The claims that should survive defendants' motion to dismiss and motion for summary judgment on the basis of exhaustion are: Moon's equal protection claim against Perry for requiring her to wear a beard guard; Moon's due process claim against Campbell for denying her search accommodation; and Moon's claims under the First Amendment and Michigan's ELCRA against all defendants except for Scudder.  All claims against Scudder should be dismissed for failure to exhaust.

32

All claims against John Doe also remain at this time.[7]

### C.     Moon's Injunction Motion

#### 1.     Standard

In considering a motion for a preliminary injunction, the Court must weigh the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a preliminary injunction, (3) whether granting the preliminary injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunction. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).  According to the Sixth Circuit, these "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).  No one single factor is controlling; however, "a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Mich. State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).  "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy." *McNeilly v.*

---

[7] In her motion to amend the complaint, Moon purported to identify John Doe as "Unknown McRoberts" and although the Court granted her motion, Moon failed to file a correct amended complaint naming McRoberts as a defendant by the deadline given in this Court's order.  *See* ECF No. 17.  As such, an order to show cause as to why John Doe should not be dismissed will follow.

*Land,* 684 F.3d 611, 615 (6th Cir. 2012) (internal quotation omitted).  "The party

seeking the preliminary injunction bears the burden of justifying such relief,

including showing irreparable harm and likelihood of success." *Id.* (citing *Granny*

*Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441 (1974)).

2.     Analysis

Moon filed her motion for a preliminary injunction on February 12, 2025.

(ECF No. 39).  In it, she asks for a preliminary injunction mandating that

defendants suspend her misconducts and the associated points and sanctions

accrued during her stay at ARF from September 17, 2024, through December 19,

2024, pending final disposition of this case.  (*Id.*, PageID.367).  Moon says that she

was issued so many misconducts that although the sanctions began on September

4, 2024, they will not end until May 8, 2025.  (*Id.*, PageID.371).  She also says that

her security level was increased before she was transferred out of ARF, and that

she has family members with chronic illnesses that she is no longer able to

regularly contact because of her loss of access to the email kiosk and phone.  (*Id.*).

She says that if they were to pass without her being aware, there would be no

amount of money that could compensate her.

Significantly, Moon does not specify which misconducts she refers to, nor

does she explain the associated sanctions that she asks the Court to halt beyond

stating that she lost access to "the email kiosk and phone."  (*Id.*, PageID.371).  As

34

a preliminary matter, without information on the misconducts that caused these results, it is unclear whether the change to her security level and loss of access to the email kiosk and phone are the same allegations that she asserted in her complaint. *See Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (internal citation omitted) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in their complaint.").

However, even if the conduct was the same as that in the complaint, Moon has not shown that she will suffer irreparable injury without an injunction. "A showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. Without such a showing, the Court cannot issue a preliminary injunction." *Mount Clemens Inv. Grp. V. Borman's Inc.*, No. 10-12679, 2010 WL 3998095, at *4 (E.D. Mich. Oct. 12, 2010) (cleaned up). "[A] matter is considered premature for judicial review when the alleged injury is speculative or may never occur." *Sharpe v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003) (internal citation omitted). Here, the injuries that Moon alleges are speculative because she only alleges that something *could* happen while she is unable to regularly contact her family members, not that it is unavoidable or even probable.

Moon also has not shown that she is likely to succeed on the merits or that it

is in the public interest to grant the injunction.  To show causation for a First Amendment retaliation claim, "bare allegations of malice" are insufficient; a plaintiff must instead establish that her protected conduct motivated the allegedly retaliatory action taken.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). Moon claims that the misconducts were in retaliation for a lawsuit she filed while at a previous facility, but she does not explain how the guards at ARF knew about that litigation, nor does she provide evidence to indicate that the misconducts were specifically motivated by her previous lawsuit.

Finally, although it is unclear if harm would be caused by granting the injunction, Moon has not established that it is in the public interest.  Moon argues that an injunction is in the public interest because "it is always in the public's interest for Government officials, including prison officials, to obey the Constitution" and that suspending her sanctions will likely decrease her monetary damages which would save taxpayer funds.  (ECF No. 39, PageID.372).  However, Moon has not established that she is likely to succeed on the merits, and her argument related to taxpayer funds does not overcome the public interest in effective prison management.  As such, Moon's motion for a preliminary injunction should be denied.

V.    Conclusion

For the reasons discussed above, the undersigned RECOMMENDS that

36

Defendants' motion to dismiss and for summary judgment on the basis of exhaustion (ECF No. 34) be GRANTED IN PART and DENIED IN PART, and Moon's motion for a preliminary injunction (ECF No. 39) be DENIED.

If this recommendation is adopted, the case will continue against Sissen, Horton, Perry, Trowbridge, Knaup, Wagus, Rosenbrock, Brown, Johnson, Campbell, and John Doe on the following claims: 1) Moon's equal protection claim against Perry for requiring her to wear a beard guard; 2) Moon's due process claim against Campbell for denying her search accommodation; 3) Moon's claims against all defendants under the First Amendment for retaliation and under Michigan's ELCRA for disability discrimination; and 4) all of Moon's claims against John Doe.  All of Moon's claims against Scudder should be DISMISSED.

Dated: April 24, 2025                                    s/Kimberly G. Altman
Detroit, Michigan                                       KIMBERLY G. ALTMAN
                                                        United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2025.

s/Dru Jennings    
DRU JENNINGS
Case Manager
